Good morning everyone. We have two cases we're going to hear this morning. And the first one is Ocasio v. would you mind pronouncing the last name? Ciach and Peterson. Ciach, thank you. It's appellate number 19-1180. Good morning.  My name is Robert D. Diminitris. I represent Mr. Ciach and Ms. Peterson who are defendants below appellants here. I would like to reserve two minutes for rebuttal. Be granted. We are here today because this is an issue of qualified immunity appeal based on a due process. The trial court determined that the notice provided by the borough, by Mr. Ciach in particular, who prepared the notice was satisfactory from a Loudermill standpoint. It provided the charges, so to speak, and the basis for the charges. The trial court determined, however, that there was allegations of bias by Mr. Ciach, against plaintiffs by Mr. Ciach and Ms. Peterson. And therefore that was a fact issue that should go to the jury. Does Loudermill require that you look into fact issues at this stage? I'm sorry, Your Honor. Does Loudermill require that you look into fact issues at this stage? Loudermill simply requires that the notice be sufficient, an opportunity to be heard, for the employee with enough factual support for the charges against them so that the employee can respond to those charges. There are always fact issues in these cases. If that were the case, every case would go to trial, virtually on due process issues. Well, does a letter setting forth trumped up charges, according to your adversary, constitute sufficient explanation of evidence against the employee? It does, Your Honor, and the trial court found that it did at 20A of the record. Even though those allegations, let's say at a later point, would be proved to be totally false? Correct, and here's why. Because the plaintiff also had the opportunity to, if he felt that there was such a degree of bias,  he also had the local agency law that would have provided him with a full evidentiary hearing. Well, that's a state court claim. The claim here is only that he was denied a property interest under the federal constitution. And dwelling upon that, let us say you prevail here. Let us say you prevail that you gave him sufficient notice, even though he claims they were trumped up, totally false. And, of course, he never showed up. But let us say you prevail on your claim here that you're entitled to immunity. This then goes into a state court proceeding, doesn't it? He still has a right to sue under state court law, under his civil service rights, doesn't he? Or does this end any claim he has whatsoever? If he's within the statute of limitations, he certainly would have that right. I don't know that he is or he isn't at this point. In terms of the number of years that he has to sue. But, well, any claim here then, if you prevail, you acknowledge he is without prejudice to his right to pursue state court claims concerning his rights under state court law. I wouldn't waive any defenses that I have, but certainly that would have been his option here. And if you look at Allen versus Suzuki, and if you look at, I think it's Dykes versus SEPTA, all those cases discuss potentially sham hearings before the local municipality. And in each case, the courts looked at, number one, did the plaintiff appear? Number two, did he have other options if he felt that that was a sham? And in those cases, he did. And he had the same opportunities here. And the other thing is here, Mr. Shiok would have been presenting this case to a public safety committee. And then beyond that, it went on to the full borough council where Ms. Peterson abstained, would abstain from any vote. If we could turn back to the notice rather than the hearing process that you're starting to describe to us. As a matter of law, would due process be satisfied if a notice had allegations that were wholly false and the entity that served the notice on the employee knew they were false? Would that comport with due process? If the person had the opportunity to appear and defend, I believe that's true. Because the person also has options beyond that to establish the falsity of those claims. So it's your position that as long as the notice identifies the allegations, sets forth the evidence to support those allegations, even if those are wholly made up, so long as the person has a chance to challenge those allegations at a subsequent proceeding, the notice itself complies with due process? I believe so, Your Honor. Is that consistent with Jennings v. Fowler where the employer is actually lied to by the employer? Where the employee is lied to? Yes. Your Honor, I believe we have the same situation there where an employee has every right to challenge those lies and produce evidence contrary to those lies. Well, let's talk about Jennings because Jennings involved a situation where in the description of the evidence there was a blatant misrepresentation saying no evidence of a tape existed when in fact one existed. And therefore, that was the problem with that notice. And that was because it was false. So why shouldn't Jennings inform us? And in this case, that's not the case here because although plaintiffs may disagree with some of the issues, and where the mayor, not the mayor at the time, the manager at the time, the mayor at the time, excuse me, was going with those issues, for instance, budget issues and whatnot, the fact of the matter is that he had the opportunity to appear and defend and he chose not to. Well, how is Jennings any different than this case? This case he claims that the allegations are totally false and he could show that if he went through a plenary hearing. And in Jennings, the employee was just lied to outright that there was no evidence against it when there was actually a tape. So how are you in any different mode than the employer was in Jennings? Well, here the record establishes that the notice was appropriate, though. That's the difference, I believe. Here, a plaintiff is alleging bias here. He's not alleging outright lies. For instance, some of these issues actually occur. You look at the entire record, his deposition, issues with the former fire chief. Yes, he had issues with the former fire chief. Issues with Ms. Peterson. Yes, he had issues with Ms. Peterson. Those sorts of things actually occurred. They just weren't, he didn't show up and say none of this ever happened. It was a dispute about maybe the extent of it and what penalty should have been applied. Initially, the penalty for these things was going to be a reduction in rent. It wasn't until he arrested Ms. Peterson three days later when everything went beyond that to a suspension. Well, your basic position, though, is that the veracity of the allegations that you make for reasons of firing him are of no consequence here, as long as he was given the reasons and he had the opportunity to appear and to show his position concerning those reasons. That's exactly right, Your Honor. Plus, as I indicated, he had the arbitration process or the court of common pleas, full evidentiary hearing under local agency. And if the notice only dealt with matters that were outside the scope of the actual dispute here, would your answer be the same? I do have hearing aids in, but sometimes they just aren't. If the notice that was provided to Mr. Siadj here was outside the scope of the proceedings, that is, it was something that was entirely different so that it really didn't provide any indication or any reason for going ahead with this termination, I assume your answer would be different, that the lateral notice would not have been complied with. It would be, Your Honor, if it was something completely, totally unrelated, off the wall, outside the scope, as Your Honor indicated. But again, we have plaintiff would have to appear, plaintiff would argue that, plaintiff had the other options that he had still within the Barrow before he ever gets to arbitration or the court of common pleas. The Barrow counsel still, Barrow counsel is the only one that can hire a fire. So he still has all these options. And here in this case, he didn't appear. He sent his FOP lawyer to the first louder mill. And the second one, he didn't appear. Didn't appear at all. And that's when he was terminated. You said that, I think in response to Judge Cowen, that veracity of the allegations is not of consequence at this stage, as long as they're detailed. Exactly, Your Honor. But let me ask you a slightly different question. What if it's the motive? What if the motive for issuance, which I think you said your adversary's position is it's bias, discriminatory bias based on race or ethnicity. What if the reason for the notice was issued based upon that kind of improper bias? Does that change whether or not the notice is sufficient? It does not. Not under the previous case law from this court. And you also have to remember we're here on a procedural due process issue, not an equal protection issue, not a Title VII issue. It's a due process issue. I think I've covered everything in my main argument. Thank you. We'll see you on rebuttal. Good morning, Your Honors. Good morning. May it please the Court. Regarding defendant's claim that appellee plaintiff Acasio did not establish a violation of his due process rights, in quoting the same case that appellants used Alvin V. Suzuki, which also Judge Joyner I think very properly quoted, when access to due process is blocked or there's evidence that the whole thing is a sham, the plaintiff does not have to pursue that process to state a due process claim. Well, that's your position that it's a sham, but their position is that the allegations were true and they gave you the factual reasons why your client was being terminated. Well, the allegations were so patently a sham because Chief Acasio had never had a negative performance examination or report until after he charged Ms. Peterson with the crime of committing a massive fraud within the police department. Now, we believe it was totally retaliatory because of that. But isn't that the purpose of the hearing, not the notice? The notice serves one purpose. The hearing serves the purpose, according to Laudermill, to determine if there's a reasonable ground to believe the charges against the employee are true and support the proposed action. Well, I believe in Alvin v. Suzuki, I think that they made a distinction that even if the notice, even if there is notice, the fact that the charges have absolutely zero merit in them that came without any evidence whatsoever. We're arguing that there was no evidence whatsoever to back up these charges. Well, that's not so with this case. They gave you the evidence that they were reliant upon. You claim it was a fraud. But according to Tucker and the other cases, they don't have to prove the truth of these allegations. This is their allegation. And you never showed up. Your client didn't show up to rebut their position that he was being terminated for cause. Well, the first notice that Chief Acasio got gave no nature of the evidence whatsoever. But the second one was. Well, the second one was, but the second one came after there was a dispute as to whether or not there even was going to be a lot of mere hearing. If I could just, for the benefit of the record, with respect to which you're referring to as the first and second notice, is the first notice the one dated February 17th at 34A? Yes. And then the second one is at 39A, which is February 23rd. Correct. You're saying it gives no notice when it describes the events at issue, the dates and the witnesses that talk about the various allegations, the missing camera, the incident with Smith, the payroll, et cetera. You're saying that that notice is deficient because it lacks detail. I didn't think your argument was on appeal that these notices were deficient for absence of detail. I thought your argument was they either were false or were motivated by bad animus. Well, yes, exactly. That's what I'm saying. I'm not saying that they didn't have detail. I'm saying that they're completely motivated by falsities and retaliation because of Chief Acasio's charges that he brought against Miss Peterson. Now, one other thing, there's evidence that has been throughout the discovery period that the actual date of that first notice may have been falsely dated. And you're referring to the fact that the headers on the second and third page of the letter have February 9th instead of February 17th. And I thought in the deposition there was an explanation about that.  But even so, that doesn't seem to be what your argument on appeal was. As I understood your argument on appeal was that the contents of the notice were problematic and therefore you think the district court was correct because there was a dispute about their veracity. Correct. Am I correct about your argument? You are correct. Okay. Where in the case law does it require establishment of veracity in the content of the notice? As the case law seems to say, that's the purpose of the hearing is to test the bona fides of the assertions. So what is your support for? And I know if you're going to turn us back to Jennings v. Fowler, that case was decided after the incident in this case. So even assuming it constituted clearly established law. Well, it's a non-presidential opinion also. True. Well, I think you could look at Yellen v. Abington Heights. I think in there they talked about boilerplate language and that describing charges against Ocasio, you know. But in Yellen, Yellen was the schoolteacher. Am I right? Yes. The schoolteacher who was accused of having an altercation with a student. And his complaint was you summoned me into the offices of the Board of Education and didn't really tell me what I was there for. And there was a factual dispute about what was actually conveyed about the allegations and even the evidence. Here, there's not a dispute about what your client was provided. He had a piece of paper with episodes, dates, and a description of the nature of the evidence. And Yellen was a district court opinion. We're not bound by that at all. Well, if I could take you back again to Alvin v. Suzuki. And I think Judge Joyner quoted this and said quite emphatically that if there is evidence that the entire process, including the notice, even if it does list some sort of evidence, if it is a sham, which this was, then the plaintiff does not have to pursue that process to state a due process claim. Well, the problem was that what was given to your client may be false. But I can't say it's a sham. I mean, they spelled out their allegations, which, if true, are definitely meritorious. You can't say the allegations are a sham unless you have a credibility hearing to prove one way or the other. But the allegations are there. And wasn't it incumbent on your client to attend the hearing and to make whatever statement they wanted to considering the falsity of the claims against him? Well, I believe that his attorney, sensing that this was a sham, went to the first hearing and made that clear. I think he was also worried about protecting whatever his client, Chief Cascio, might say at this. And I just think it was so overwhelming that this was, in fact, a sham, and that this entire thing was based on retaliation against the defendant, as well as the fact that there is much evidence about the racial nature of this, specifically to Ms. Peterson, who was well-known, and we have met multiple witnesses, that she often referred to Chief Cascio as the spick who replaced the nigger. Well, that's subject to proof as to veracity. Let me add something which is troubling me to some extent. Let us say we conclude, the panel concludes, that you were required to attend the hearing, that there were sufficient allegations that would corroborate the Latimer hearing, and your client didn't show up and therefore waived the Latimer hearing. He didn't show up. Do you still have a state court right? This is only a federal right to your property interest in the job. Do you still have a right to pursue, in this case, your allegation that you were improperly fired, or do you have to file separately in state court, claiming that your civil service or other rights under state law have been violated? Well, I believe that the federal court can transfer this case. No, I'm not talking about transferring. Let us assume, the worst for you, that you lose this case. We hold that there was a proper Latimer proceeding here, and the defendant is not liable for violating your property interest in that job. I'm sorry, you're saying if I go to trial on this? No, I'm saying if we do not agree with you, we conclude that there was a proper Latimer hearing here, and that the defendant is not used to being here for damages. And we say that you're not entitled to any damages because there was a proper Latimer hearing. Do you still have a right to go to state court and claim that your civil service or other state rights have been violated by being improperly terminated? Well, I believe that the defendant will then bring up an issue preclusion that if the federal court determines... I don't care what he's going to bring up. One note, do you still have a right to go to state court, or do we have to, if we terminate this and say that you were given a proper Latimer hearing, do we terminate this and have to say without prejudice to any rights you may have under state law? This is not a state law proceeding. I would think you would have to do that. Because if you determine that, if you make a decision with prejudice, I believe that that would prevent us from bringing a state claim. You're saying that if we find that the constitutional due process violation should be dismissed because of qualified immunity, that that dismissal would preclude? Well, I think we'd be arguing the same things. I can't say I haven't done the research, but I would think that if the issue is whether the Latimer hearing had proper notice, I don't see how there would be any distinction that I would be able to make in a state claim that would alter the facts such that it would comport with state law. You mean your theory of the case would still be the same, that they still didn't give you proper notice, so you can't invoke your civil rights protections? Your civil servant protections, I think, is what Judge Cowen's... I think that would be an issue. I can't say for certain, but I think it would be an issue. If I may, I only have four minutes left. Again, the other problem here is I do believe that all of these issues here are, again, point to issues of material fact, and I don't think that the issues of whether or not this Latimer notice was proper or not is an issue for the trier of the fact. But if the Latimer law tells us that a proper notice needs to identify the allegations, identify the evidence that would be adduced sufficient so that the employee would know what facts it needed, he or she needed to marshal, to respond to those allegations, if that's all Latimer requires, we can make that decision based upon this record. I don't think that that is all Latimer requires. I also think that, again, when you go back to Alvin v. Suzuki, I think that, again, if... But wasn't Alvin v. Suzuki... Let's not merge things so much. Didn't Alvin v. Suzuki also look at the process as not just a notice? Wasn't there more to it than the notice? And I'm happy to be corrected if I'm wrong. Well, that's true. But I think they also looked at the notice, and I think that what they really said is if there is... if it's obvious that this thing is a sham from the beginning, that the plaintiff here does... or the Chief Acasio doesn't have to pursue this. Now, he did have his attorney go to represent him, and his attorney told him that, you know, this thing, it just reeks of a sham. And I think... If I could just go back to Alvin v. Suzuki for a second. It wasn't also part of the problem, though. If you don't have a chance to test the allegations and the evidence set forth in that notice, that's where the deprivation for that particular employee occurs. They just never had a chance to test it. That's the problem that is different than the problem you have here, because here, as Judge Cowen has pointed out, there was an opportunity to test and never exercised. Well, it's our contention that this notice was improper from the beginning. It came after Chief Acasio had arrested Councilperson Peterson. There's issues as to the validity of the actual notice letter, whether it was forged later and that it was not presented to Chief Acasio on the date that it says it did, and that there's so many issues of bias here that have been brought out in discovery that predated all of this sham termination hearing on the part of the defendants. Do you have any case law that would guide us to say your adversaries would have been on notice that an otherwise proper lateral notice that's motivated by improper things like race or ethnicity renders that notice ineffective and a violation of due process? Well, Jennings Fowler v. City of Scranton, I think, is... Well, as we talked about, that postdates the events and wouldn't operate as clearly established notice. I think it's not presidential, and it talks about false information. I asked you about improper notice. Well, Wood v. Strickland, they talk about the malicious intention to cause a deprivation. Is that a substantive or a procedural due process case? Well, I believe it touches on both. How about Tucker? That's devastating for you, isn't it? And it's a presidential case. Well, Tucker says that... Well, they talk about a meaningful hearing, a sufficient explanation of employer's evidence to permit a meaningful response. They also talk about... Well, they say that... In effect, they're saying there's notice. It's notice. They don't want to prove any veracity. They just notice. Well, your time's running out. Let me ask you this question. Why didn't your client appear at the hearing, rescheduled hearing, for the hearing or the rescheduled hearing, to contest the falsity of the allegations against him? Because I think he was fearful he was going to be ambushed, and he was going to be ambushed, and that the hearing was going to be an absolute sham. He did send letters saying why he didn't want to attend. And considering the fact also that he had arrested councilperson Peterson, I believe at that point he believed that he was not going to get a fair hearing, and it was not in his interest to attend. Does he have that prerogative under the law to make those determinations? Well, I believe, again, I believe that if it is so obvious that the entire accusations are based on such a sham, and that if it is clear that the hearing is not going to have any credibility, I don't believe that a plaintiff in this matter, the Pelley here, doesn't have to pursue, doesn't have to attend that hearing in order to pursue his due process. Are you charging at the same time that the notice did not apprise your client of what the problem was, why he was being terminated? I'm saying that there are issues as to actually when he did get this notice. There are issues about the credibility of that notice because of the date issues, and that also the basis of that, of the evidence, of the so-called evidence, was so enveloped in credibility issues and a sham. Okay. Thank you. Thank you, Your Honor. All right. Thank you. Okay. Your Honor, you had some questions on the record. If we look at 34A, that's the notice. That's dated February 17th, and Mr. Syok did explain the previous page was dated February 9th, which is when he initially prepared it. The arrest of Ms. Peterson did not occur until after Syok and the plaintiff met. The arrest of Ms. Peterson occurred on February 22nd. The district attorney threw out those charges on February 25th because they were a sham. The fact of the matter is that Alvin cites McDaniels v. Split and Dykes v. SEPTA with respect to issues that we're dealing with here. There are other options that the plaintiff had here. The plaintiff chose not to appear. His FOP attorney appeared according to the plaintiff in his deposition testimony because he was told by his attorney at the time, the FOP attorney, that you're suspended. You don't need to be there. And that was that. There was no further explanation in this record as to why he did not appear. And I believe that that covers most of the issues. But when you look at the record, the notices, 34A, 38A, and 39A, you'll see the dates here, and they're clearly ahead of time. Did you want to respond to your adversary's comments about Alvin v. Suzuki and Wood and whether or not they should influence the issues here? I don't believe they do. I believe Alvin v. Suzuki supports the issues here and I think the court basically held that futility did not excuse the plaintiff's failure to appear. And we have the same issue here. And we also have the other options that the plaintiff had. And what about his, he made reference to Wood, the case called Wood. I'm not, I can't remember the fact. That's okay. I apologize. No apologies needed. We would simply request that the relief be provided, that is reversal of Judge Joyner's opinion on qualified immunity for Sealk and Peterson and that the remaining conspiracy claim be dismissed as well since there would be no underlying due process claim. Thank you very much. Thank you. Thank you, Counsel Bluth, for excellent arguments. We'll take the matter under advisement. Thank you.